IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | 2:18cr76 |
| | ) | 2:20cr19 |
| | ) | **Electronic Filing** |
| **VAN GREGORY BARROWS** | ) | |

## MEMORANDUM ORDER

AND NOW, this 28th day of October, 2021, upon due consideration of defendant's motion for Safety Valve Relief and the parties' submissions in conjunction therewith, IT IS ORDERED that [95] the motion be, and the same hereby is, denied.

Defendant has pled guilty to conspiracy and attempt to distribute controlled substances in violation of 21 U.S.C. § 846 ("the offense of conviction"). He seeks a determination that he is eligible for relief under the limitation on applicability of statutory minimum sentences set forth at 18 U.S.C. § 3553(f), commonly referred to as the "Safety Value." The parties agree that defendant meets each of the requirements for this section except the following: "the defendant did not . . . possess a firearm . . . in connection with the offense." Id. at § 3553(f)(2). Defendant contends that the handguns he possessed when arrested were present due to defendant's general affinity toward and enjoyment of guns and not as part of or "in connection with" the offense of conviction. The government maintains that defendant possessed several handguns as part of the conspiracy to possess with the intent to distribute methamphetamine.

Defendant bears the burden of demonstrating that he is eligible for safety-valve relief. United States v. Shwaish, 2021 WL 1060349 (W.D. Pa., Mar. 18, 2021) (citing United States v. Acosta, 283 F. App'x 899, 905 (3d Cir. 2008) ("The defendant bears the burden to meet each of five criteria to receive the benefit of the safety valve provision." (citation omitted)) and United

States v. Sabir, 117 F.3d 750, 754 (3d Cir. 1997)).  He must do so by a preponderance of the evidence.  Id.

"To be eligible for safety-valve relief, a defendant must show, inter alia, that he 'did not . . . possess a firearm . . . in connection with the offense.'"  United States v. Gonzales, 513 F. App'x 141, 143 (3d Cir. 2013) (citing 18 U.S.C. § 3553(f)(2) & U.S.S.G. § 5C1.2(a)(2)).  Under the Sentencing Guidelines, an "offense" is defined "broadly to include the offense of the conviction and all relevant conduct."  Id. (quoting U.S.S.G. § 5C1.2 cmt. n. 3 (emphasis added)).  "[R]elevant conduct' includes 'all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of the conviction.'"  Id. (citing U.S.S.G. § 1B1.3(a)(1)(A), (a)(2)).  The "same course of conduct" is further defined in the commentary "as events or activities that are 'significantly connected or related to each other so as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses.'"  Id. (quoting U.S.S.G. § 1B1.3 cmt. n. 9(B)).

To qualify as relevant conduct, the conduct in question "need not be the subject of a formal charge or an element of the offense of conviction, nor must it occur contemporaneously with the offense conduct."  Id. (quoting United States v. Rudolph, 137 F.3d 173, 177 (3d Cir. 1998); United States v. Kulick, 629 F.3d 165, 171 (3d Cir. 2010).  In determining whether two offenses constitute the same course of conduct, the applicable case law requires consideration of three factors: "(1) the temporal proximity between the two offenses; (2) the similarity of the offenses; and (3) the regularity of the offenses."  Id. (citing U.S.S.G. § 1B1.3 cmt. n. 9;  Kulick, 629 F.3d at 171).

Defendant pled guilty to one count of conspiracy to possess with the intent to distribute 50 grams or more of methamphetamine and one count of attempt to possess with the intent to distribute 50 grams or more of methamphetamine, each in violation of 21 U.S.C. § 846.  He also

pled guilty to possession of a firearm by an unlawful user of controlled substances in violation of 18 U.S.C. § 922(g)(3). These offenses were based on conduct occurring in September through November of 2017. The conspiracy and attempt offenses subject defendant to a statutorily mandated minimum sentence of 120 months. U.S.C. §§ 846, 841(b)(1)(A)(viii).

In the early and mid-fall of 2017, defendant was using methamphetamine and participating in a scheme to acquire and distribute it. He developed a network for distributing the drug in and around his hometown of Bowden, West Virginia. He acquired the drug through purchases from vendors on the "dark web."

In November of 2017, defendant travelled to the Pittsburgh area with Paige Plotts and Joseph Cumins. They rented a hotel room at the Intown Suites on McKnight Road in Ross Township, Allegheny County. They brough with them cell phones, computers, digital scales, magnetic dry boxes and four handguns. Defendant came to the Pittsburgh area to use cryptocurrency ATMs to convert U.S. currency into cryptocurrency in order to purchase more methamphetamine on the dark web.

On November 17, 2017, federal agents executed a search warrant on the hotel room. That warrant resulted in the seizure of the above-referenced property along with a small amount of methamphetamine. The handguns were loaded; Cummins had one of them tucked in his waistband.

In the follow-up to the execution of the search warrant defendant admitted that he was a user of methamphetamine. He had been arrested earlier in the year. He purchased three of the handguns in transactions with individuals, presumably because he could not acquire weapons through a traditional method. He accepted the fourth handgun as payment for a drug debt. He then gave it to Cummins, whom defendant knew to deal heroin. Defendant explained to the

agents that he possessed the guns because he liked to shoot guns.  There is no evidence that defendant used the handguns in that manner while in the Pittsburgh area.

A search of the electronic devices revealed that defendant had recently made a purchase on the dark web from his supplier and the shipment was on-route to a co-conspirator in Beverly, West Virginia.  Defendant admitted that the shipment contained 8 ounces of methamphetamine.  Defendant also admitted to having very recently ordered another one-half pound of methamphetamine and it was being shipped in Plotts' name to the room at the Intown Suites.  About a week later that parcel arrived just as defendant said it would and it contained 8 ounces of pure methamphetamine.  Defendant arranged for both shipments in order to distribute them.

Defendant possessed the handguns in connection with the charged conspiracy.  He obtained the weapons through transactions with individuals; one of those transactions involved the acquisition of the weapon in exchange for the cancellation of a debt owed for controlled substances.  Defendant transported the weapons from West Virginia to Pittsburgh.  While in Pittsburgh, the weapons were fully loaded and kept with defendant and his travel companions in the hotel room.  Defendant used the hotel room to access cryptocurrency ATMs in the area to convert currency in furtherance of the conspiracy's primary objection of acquiring methamphetamine for distribution.

Defendant arranged for purchases of methamphetamine while in Pittsburgh.  One of those purchases involved the attempted acquisition of a half a pound of pure methamphetamine.  Defendant arranged for that shipment to be delivered to the hotel room where he and his companions were staying.  The shipment arrived as defendant contemplated it would.  The inference that the handguns were present for protection during the hotel stay and the anticipated transportation of that shipment back to West Virginia is glairing and inescapable.  Accordingly, the court must make the finding that the handguns were present for those purposes.

4

Moreover, there is no evidence that the handguns were stored in a case while separated from the ammunition, which one would expect had they been transported there for recreational or sportsman-type purposes.  There is no evidence that defendant was in the Pittsburgh area to visit sportsman's clubs or to go to shooting ranges.  In fact, there is no evidence that defendant used the weapons for recreational or sportsman-type purposes at any point during the escapades leading to the charges in the two criminal prosecutions for which he is to be sentenced.

It follows that the record establishes that the offenses of conspiracy/attempt to distribute methamphetamine and illegal possession of a firearm are temporarily related and sufficiently part of the same course of criminal conduct undertaken (and intended to be undertaken) by defendant in November of 2017.  It is clear by a preponderance of the evidence that defendant possessed at least three of the weapons in connection with the inchoate crimes of conspiracy and attempt charged at 2:18cr46.  Consequently, his motion for application of the Safety Valve properly has been denied.

<u>s/David Stewart Cercone</u>
David Stewart Cercone
Senior United States District Judge

cc:    Jerome A. Moschetta, AUSA
       Patrick K. Nightingale, Esquire

       United States Marshal's Office
       United States Probation Office

       (*Via CM/ECF Electronic Mail*)

5